UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| APRIL OVERMAN | CIVIL ACTION |
| VERSUS | NO. 13-614-EWD |
| CITY OF EAST BATON ROUGE, ET AL. | CONSENT CASE |

**RULING AND ORDER ON PLAINTIFF'S MOTION FOR**
**SUMMARY JUDGMENT ON MITIGATION AND DAMAGES**

Before the Court is a Motion for Summary Judgment on Mitigation and Damages, filed by plaintiff April Overman.[1] The City of East Baton Rouge and Mayor Melvin "Skip" Holden (collectively, "Defendants") have filed an opposition[2] and Plaintiff has filed a reply.[3] For the reasons set forth herein, Plaintiff's Motion for Summary Judgment is **DENIED** and the issues of mitigation and damages shall be referred to a trial on the merits.

**I. Background**

This matter is before the Court for a second time after a partially successful appeal of this Court's September 25, 2015 judgment[4] rendered in favor of Plaintiff on her employment discrimination claim. *See*, *Overman v. City of East Baton Rouge*, 656 F. App'x 664 (5th Cir. 2016). As the Fifth Circuit explained, Plaintiff worked as a law enforcement officer for the New

---

[1] R. Doc. 129.
[2] R. Doc. 143.
[3] R. Doc. 149. In addition to supporting memoranda, Local Rule 56.1 requires a Motion for Summary Judgment to "be accompanied by a separate, short and concise statement of the material facts" that the movant contends are undisputed. Likewise, a party opposing summary judgment must also include, along with its opposition, "a separate, short and concise statement of the material facts as to which there exists a genuine issue to be tried." LR 56. Here, Plaintiff filed Uncontested Material Facts in Support of Claimant Overman's Motion for Summary Judgment on Mitigation and Damages (R. Doc. 129-2) and Defendants filed a Statement of Contested Material Facts and Opposition to Plaintiff's Uncontested Material Facts in Opposition to Plaintiff's Motion for Summary Judgment. (R. Doc. 143-2).
[4] R. Doc. 74.

Orleans Police Department ("NOPD") from 1985 to 2010. *Id.* at 666. Plaintiff began as a patrol officer and eventually became captain in 2005, which is the rank she held until she retired in 2010. *Id.* In early 2011, Plaintiff applied, tested, and interviewed for the position of police chief for the city of Baton Rouge, Louisiana. Although Plaintiff received the highest score on the civil service police chief examination among all thirty applicants and was ranked as one of the top five candidates for the position, defendant Mayor Holden selected another candidate, Dewayne White, for the Baton Rouge police chief position. *Id.*

On September 18, 2013, Plaintiff filed suit in this Court under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Louisiana Employment Discrimination Law ("LEDL"), alleging that Defendants had discriminated against her during the hiring process based on her sex.[5] The parties consented to try the case before a magistrate judge pursuant to 28 U.S.C. § 636(c)[6] and waived a jury trial.[7] After a two-day bench trial, Magistrate Judge Stephen C. Riedlinger rendered judgment in favor of Plaintiff, finding that Defendants' proffered legitimate reasons for not hiring Plaintiff as police chief were pretextual and awarding Plaintiff $272,148 in back pay and lost pension benefits, based on a potential annual salary of $102,276.[8] Magistrate Judge Riedlinger concluded that Plaintiff had proved by a preponderance of the evidence that she was entitled to back pay from May 27, 2011, when Plaintiff was informed that she was not hired for the position of police chief,[9] until December 31, 2014, when she obtained employment after obtaining her Ph.D.[10] Magistrate Judge Riedlinger found that Plaintiff had made a sufficient, reasonable effort to mitigate her damages and to find substantially equivalent work by: (1) completing the retirement

---

[5] R. Doc. 1.
[6] R. Doc. 9.
[7] R. Docs. 43, 44.
[8] R. Doc. 74.
[9] R. Doc. 74 at 3.
[10] R. Doc. 74 at 33-34.

process with the NOPD and obtaining her pension, which provided her with an annual income of approximately $62,000; (2) continuing to teach part-time with the University of Phoenix until September 2011 while looking for another full-time academic position in the field of criminal justice; (3) obtaining a position as an instructor at a Mississippi police academy in September 2011, a position she held until it was clear that she would be let go or that her salary would be significantly reduced due to downsizing; (4) leaving the police academy and devoting all of her time to finishing her Ph.D., renovating her home in Louisiana to sell it, and relocating her mother to Mississippi; and (5) obtaining her Ph.D. and resuming her search for academic employment.[11]

With respect to the period of time between Plaintiff's resignation from the police academy in September 2012 and obtaining her Ph.D. in May 2014, Magistrate Judge Riedlinger concluded that Plaintiff's decision to leave the police academy, finish her Ph.D., relocate her mother, and renovate her home was reasonable because Plaintiff reasonably believed that she would either be laid off from her position at the police academy or that her salary would be significantly reduced.[12] Magistrate Judge Riedlinger also found that Plaintiff could apply for higher-salaried positions in academia after obtaining her Ph.D., noting that, "The evidence shows that this is in fact what the plaintiff did. Plaintiff received her doctorate in May 2014 and began looking for employment in higher education."[13]

With respect to Plaintiff's claim that she suffered a loss of pension benefits as a result of being denied the position of Baton Rouge police chief, Magistrate Judge Riedlinger found

---

[11] R. Doc. 74 at 34-35.
[12] R. Doc. 74 at 36.
[13] R. Doc. 74 at 36. It is unclear from Magistrate Judge Riedlinger's opinion how he determined that Plaintiff was entitled to back pay until December 31, 2014, since he concluded that, "Although the plaintiff obtained a position as a professor with Southern New Hampshire University in late 2014, she presented no evidence as to her job duties and responsibilities, whether the job is full-time or part-time, or what salary she is being paid. Without such evidence, the court cannot conclude that accepting this position constitutes sufficient effort to find substantially equivalent work and mitigate her damages." (R. Doc. 74 at 36-37).

3

Plaintiff's testimony regarding the calculation of her pension was "uncontradicted and credible."[14] Magistrate Judge Riedlinger found that a preponderance of the credible evidence established that if Plaintiff had been selected for the position, she would have served as police chief for at least three years, or until May 31, 2014. Magistrate Judge Riedlinger further found that with these three years of service at the significantly higher salary of police chief rather than police captain, the amount of Plaintiff's yearly pension would have almost doubled.[15] Specifically, Magistrate Judge Riedlinger found that Plaintiff's yearly pension would have increased by $60,000.[16] However, because Plaintiff did not argue or present evidence to support a specific amount or number of years she should recover for the lost pension, Magistrate Judge Riedlinger concluded that it would "strain equity to award the plaintiff an amount for this loss that would last indefinitely."[17] Instead, Magistrate Judge Riedlinger found it was more equitable to compensate Plaintiff for the loss of three years of increased pension income, or $180,000.[18] Because neither party presented any arguments or evidence related to the issues of reinstatement and front pay, Magistrate Judge Riedlinger found that placing Plaintiff in the position of Baton Rouge police chief was not feasible and that an award of front pay, in lieu of placement in that position, was not supported by the evidence.[19]

Defendants appealed Magistrate Judge Riedlinger's September 25, 2015 decision to the United States Fifth Circuit Court of Appeals, which affirmed the finding of liability under Title VII, but vacated the award of damages and remanded the case to this Court for reconsideration of whether Plaintiff undertook reasonable efforts to mitigate her damages after leaving her position

---

[14] R. Doc. 74 at 37.
[15] R. Doc. 74 at 37-38.
[16] R. Doc. 74 at 38.
[17] R. Doc. 74 at 38.
[18] R. Doc. 74 at 38.
[19] *Id.* at 38.

at the police academy in 2012 to enroll in school. *Overman v. City of East Baton Rouge*, 656 F. App'x 664 (5th Cir. 2016). In its July 11, 2016 opinion, the Fifth Circuit concluded, "We cannot discern from the record whether the district court appropriately considered whether Overman's decision to obtain her doctorate degree and change fields of employment from police work to full-time academia is consistent with the equitable principles of back pay under Title VII." *Id*. at 671. The Fifth Circuit explained, "It appears that the district court avoided this discussion despite Overman's admission that, following her decision to leave her job at the training academy, she did not undertake further efforts to seek employment until she completed her doctorate and took a position on the faculty of Southern New Hampshire University." *Id*. The Fifth Circuit concluded that, "If Overman's decision to attend school resulted from a diligent, but ultimately fruitless, job hunt, then her duty to mitigate damages under Title VII may have been fulfilled. Conversely, if Overman chose to pursue her PhD instead of pursuing comparable available employment, then she did not fulfill her duty to mitigate." *Id*. at 672 (citations omitted). According to the Fifth Circuit, "The district court, however, did not conduct this analysis, and instead generalized that Overman's efforts to mitigate were 'reasonable' in light of her personal responsibilities and other individual circumstances." *Overman*, 656 F. App'x at 672. As such, the Fifth Circuit vacated the award of damages and remanded the case for further consideration of whether Plaintiff's decision to attend school on a full-time basis is consistent with her duty to mitigate damages under Title VII. *Id*. The Fifth Circuit advised that upon remand, "[T]he district court may hear additional testimony and consider additional evidence to the extent it deems appropriate." *Id*.

With respect to the damages award, the Fifth Circuit found that, "the record does not provide a clear understanding of how the district court calculated its damages award for 'loss of pension increase.'" *Id*. at 672. The Fifth Circuit found that Plaintiff had testified that her pension

should have been calculated by taking 3.33% of the average of her highest three years of salary and multiplying that by the years of service. *Id*. The Fifth Circuit found that Magistrate Judge Riedlinger, relying on Plaintiff's off-hand estimation that her pension would have "come very close to doubling," simply added $60,000 to Plaintiff's existing yearly pension of $61,909. *Id*. The Fifth Circuit pointed out that this calculation made Plaintiff's present yearly pension benefits nearly $20,000 more than the $102,276 yearly salary that Magistrate Judge Riedlinger concluded she would have earned as Baton Rouge police chief. *Id*. As such, the Fifth Circuit advised, "On remand, the district court should make an effort to explain more fully its rationale in the treatment of these pension benefits, and consider taking additional evidence regarding how pension benefits are calculated." *Id*.

After the matter was remanded back to this Court, Plaintiff filed the instant Motion for Summary Judgment on February 24, 2017, asserting that there are no genuine issues of material fact regarding the issues of mitigation and damages.[20] Plaintiff claims that she took reasonable efforts to mitigate her damages by attempting to find employment that was "substantially equivalent" to that of Baton Rouge police chief and by returning to school full-time to complete her Ph.D.[21] Plaintiff asserts that she performed a diligent job search before going back to school to finish her Ph.D., applying for several academic positions before deciding to resign in 2012 and applying for a police chief position in Gulfport, Mississippi in 2012.[22] Plaintiff also asserts that she applied for two other positions—a tenure-track professorship at the University of Southern Mississippi in November 2012 and a law enforcement grant administrator position in December 2013—but claims that she never received a response regarding the professorship and that the grant

---

[20] R. Doc. 129.
[21] R. Doc. 129-1 at 3.
[22] R. Doc. 129-1 at 9-10.

administrator position was never filled.[23] Plaintiff maintains that there was no comparable employment available after she resigned from her position at the Mississippi police academy in September 2012, and that she was under no obligation to pursue lesser employment, relocate, or change to a new career field.

With respect to the calculation of damages, Plaintiff asserts that Magistrate Judge Riedlinger erred in his salary calculation and that the correct salary figure for purposes of calculating her damages is $124,758, which is based upon a city salary of $118,758 plus $6,000 in state supplemental pay.[24] Plaintiff arrived at these numbers by looking at the salaries of two prior Baton Rouge police chiefs, Jeff LeDuff and Carl D'Abadie, which information is purportedly available online at the City of Baton Rouge's website.[25] Plaintiff alleges that LeDuff and D'Abadie earned $142,510 per year from 2008-2011 and 2013-2014, respectively, which included a 20% longevity rate.[26] Thus, Plaintiff asserts that they each earned a base pay of $118,768, "which is the same amount provided in the BRPD job announcement for the [police chief] position and used in the trial court's calculation of the lost pension benefits."[27] As such, Plaintiff asserts that she is entitled to an award of $447,053 in back pay for the period from June 1, 2011 to December 31, 2014, based upon an annual salary of $124,758 and including an offset for the actual pension Plaintiff collected through December 31, 2014.[28] Plaintiff also asserts that she is entitled to an award of $432,634[29] in lost pension benefits, which is also based upon an annual salary of

---

[23] R. Doc. 129-1 at 10.
[24] R. Doc. 129-1 at 15.
[25] Plaintiff asserts that the salary information is available at https://data.brla.gov/browse?category=Government. (R. Doc. 129-1 at 15).
[26] R. Doc. 129-1 at 15-16. Plaintiff asserts that D'Abadie's base salary in 2015 was increased to $145,510 "without longevity." (R. Doc. 129-1 at 16).
[27] R. Doc. 129-1 at 15-16.
[28] R. Doc. 129-1 at 19-20.
[29] R. Doc. 129-1 at 20 (*citing* R. Doc. 129-35). Plaintiff asserts, "**Today's value of the loss of pension benefits with annual salary of** $124,758.00, equals $432,634 in loss of pension benefits with offset for actual pension collected through 12/31/2014 incorporated into that figure." (R. Doc. 129-1 at 20) (emphasis in original).

$124,758 and includes an offset for the actual pension Plaintiff collected through December 31, 2014.[30]

In opposition, Defendants assert that the Motion for Summary Judgment should be denied because Plaintiff failed to mitigate her damages after resigning from her position at the police academy in September 2012.[31] Defendants assert that Plaintiff failed to exercise good faith and due diligence in her job search because she only provided evidence of four job applications submitted between September 2012 and January 2014, three of which were for positions in academia and only one that was for a position in law enforcement (the Gulfport police chief position).[32] Defendants assert that Plaintiff failed to reasonably mitigate her damages by too narrowly defining "substantially equivalent" employment to include only the position of police chief, and by failing to inquire as to any lateral hires or positions of leadership within a single larger police department.[33] Defendants further assert that Plaintiff's decision to go back to school to finish her Ph.D. does not satisfy her duty to mitigate damages because Plaintiff resigned from her position at the police academy in September 2012, but she did not even apply for the Ph.D. program until November 2013. Although Plaintiff remodeled and sold her own home and sold her mother's home during that time, Defendants argue that Plaintiff should have continued her job search during that period. Thus, Defendants assert that there exists a material issue of fact as to whether Plaintiff's actions from September 2012 until her return to school in the spring of 2014 were reasonable.

Defendants further assert that there are genuine issues of material fact regarding what Plaintiff's salary would have been had she been appointed Baton Rouge police chief. Defendants

---

[30] R. Doc. 129-1 at 20.
[31] R. Doc. 143.
[32] R. Doc. 143-1 at 11.
[33] R. Doc. 143-1 at 12, 16.

8

contend that Donald White,[34] the person Plaintiff claims she would have replaced as police chief, earned an hourly rate of $47.8164 ($99,458 annually) as of May 31, 2011, which was increased to $52.5000 ($108,680 annually) as of February 18, 2013.[35] Defendants assert that these figures should be used to calculate Plaintiff's damages. Defendants also assert that Plaintiff misstated the salaries of former police chiefs LeDuff and D'Abadie. Defendants contend that D'Abadie earned an hourly rate of $47.8164 when he was hired in February 2013, which increased to $57.0952 in July 2013 when his appointment as police chief became permanent.[36] Defendants claim that LeDuff was paid an hourly rate of $35.203 from February 24, 2005 until December 23, 2006, when his hourly rate increased to $53.112.[37] Defendants also assert that the state supplemental pay, which Plaintiff concedes would have been received from the State rather than Defendants, should not be included in her salary when calculating damages, especially since Plaintiff has not stated her qualifications for receiving the state supplemental pay. Because there are numerous material issues of fact even within Plaintiff's arguments, Defendants assert her request for summary judgment on this issue must be denied.

Finally, Defendants assert that Plaintiff's demand for lifetime retirement benefits is not supported by the facts or the law. Alternatively, Defendants assert there are material issues of fact that preclude summary judgment on this issue.[38] Defendants assert that while the Fifth Circuit remanded the matter for consideration of the amount awarded to Plaintiff for three years of

---

[34] Although Defendants refer to "Donald White," his full name appears to be Donald Dewayne White. (*See*, R. Doc. 129-1 at 17, 25; R. Doc. 143-5 at 1-2).
[35] R. Doc. 143-1 at 17 (*citing* R. Doc. 143-5 at 1-2). Although Defendants assert that White earned an hourly rate of $52.5000 as of December 9, 2012 and February 18, 2013, the documents submitted by Defendants show that White earned an hourly rate of $52.2500 as of December 29, 2012 and February 18, 2013. (R. Doc. 143-5 at 2).
[36] R. Doc. 143-1 at 18; *See*, R. Doc. 143-5 at 3-4. Defendants do not provide the annual salary that D'Abadie earned based upon these hourly rates.
[37] R. Doc. 143-1 at 18; *See*, R. Doc. 143-5 at 19-20. Defendants do not provide the annual salary that LeDuff earned based upon these hourly rates.
[38] R. Doc. 143-1 at 19.

decreased pension benefits, Plaintiff is now seeking the present day value of her difference in lifetime retirement benefits, or an award of front pay. Defendants contend that such a calculation requires assumptions regarding Plaintiff's salary and how long she will live while ignoring any offsets from her future employment, effectively punishing Defendants and allowing Plaintiff to receive a windfall. Defendants assert that Plaintiff provided no factual support regarding the benefits she may receive from her academic positions and whether those positions would provide retirement or social security benefits that would exceed any alleged losses, thereby creating a windfall. Defendants assert that this Court's prior award of three years' worth of pension benefits was equitable because after that point, Plaintiff would have been reaping the benefits of obtaining her Ph.D., a benefit Plaintiff presumably would not have obtained while serving as Baton Rouge police chief.[39] Based on the foregoing, Defendants maintain that the Motion for Summary Judgment should be denied because there are genuine issues of material fact still in dispute regarding the issues of mitigation and damages.

In reply, Plaintiff maintains that there are no genuine issues of material fact regarding whether she undertook reasonable efforts to mitigate her damages by seeking "substantially equivalent" employment before deciding to return to school to finish her Ph.D.[40] Plaintiff further asserts that Defendants have the burden of proving that she failed to mitigate her damages, and that Defendants have failed to do so.

## II. Law and Analysis

### A. Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.

---

[39] R. Doc. 143-1 at 21.
[40] R. Doc. 149.

R. Civ. P. 56; *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). "A dispute regarding a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party." *Moreland v. United States*, 2013 WL 3283700, at *1 (N.D. Tex. June 28, 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). Once the moving party has demonstrated the absence of a material fact issue, the party opposing summary judgment may not rest on the mere allegations of his pleadings and must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). When considering summary judgment evidence, the court must view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). However, the court must "not weigh the evidence or evaluate the credibility of witnesses." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

### B. Mitigation of Damages

Section 706(g) of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(g) permits an award of back pay to victims of unlawful discrimination. *Sellers v. Delgado Community College*, 839 F.2d 1132, 1135 (5th Cir. 1988) ("*Sellers II*"). However, "back pay is not an automatic remedy, but is equitable in nature and may be invoked in the sound discretion of the district court." *Id.* at 1136 (citing *Ford Motor Co. v. E.E.O.C.*, 458 U.S. 219, 226, 102 S.Ct. 3057, 3063, 73 L.Ed.2d 721 (1982)). Further, successful Title VII plaintiffs have a statutory duty to mitigate their damages by using reasonable diligence to obtain substantially equivalent employment. *Sellers v. Delgado College*, 902 F.2d 1189, 1193 (5th Cir. 1990) ("*Sellers III*") (citation omitted). "Substantially equivalent employment is that employment which affords

11

virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status as the position from which the Title VII claimant has been discriminatorily terminated." *Sellers III*, 902 F.2d at 1193 (internal quotation marks omitted). "The reasonableness of a Title VII claimant's diligence 'should be evaluated in light of the individual characteristics of the claimant and the job market.'" *Sellers III*, 902 F.2d at 1193 (quoting *Rasimas v. Michigan Dept. of Mental Health*, 714 F.2d 614, 624 (6th Cir. 1983)). Ultimately, the district court's determination of whether or not a Title VII claimant used reasonable diligence to obtain substantially comparable employment is subject to the clearly erroneous standard of review. *Sellers III*, 902 F.2d at 1193 (quotation omitted).

Further, while the Title VII plaintiff has a duty to minimize her damages, the employer bears the burden of proving the plaintiff failed to undertake reasonable efforts to mitigate her losses. *Sellers III*, 902 F.2d at 1193 (citation omitted). The employer can satisfy this burden by demonstrating that substantially equivalent work was available and that the Title VII claimant did not exercise reasonable diligence to obtain it. *Id.* (citation omitted). However, "if an employer proves that an employee has not made reasonable efforts to obtain work, the employer does not also have to establish the availability of substantially equivalent employment." *Sellers II*, 839 F.2d at 1138.

After reviewing the arguments and evidence submitted by the parties, it is evident that there are genuine issues of material fact in dispute regarding whether Plaintiff undertook reasonable efforts to mitigate her damages after leaving employment in 2012 to enroll in school. "[T]he factual issue of mitigation is 'generally one requiring determination by the trier of fact.'" *U.S. Equal Emp't. Opportunity Comm'n v. United Bible Fellowship Ministries, Inc.*, 2015 WL 12777363, at *11 (S.D. Tex. Mar. 25, 2015); *See*, *Sellers III*, 902 F.2d at 1193-94 ("As we have

12

noted, we must approach our review of this case aware that the district court's findings on mitigation of damages are subject to a clearly erroneous standard of review, and we may not substitute our judgment for that of the trier of fact.").

Because factual issues preclude a determination of the issue of mitigation, which will directly affect Plaintiff's award for back pay, the Motion for Summary Judgment must be denied. As such, all of the issues raised in the Motion for Summary Judgment regarding mitigation and damages shall be referred to a trial on the merits.[41]

Accordingly,

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment on Mitigation and Damages,[42] filed by plaintiff April Overman is **DENIED.**

**IT IS FURTHER ORDERED** that the issues of mitigation and damages shall be referred to a trial on the merits.

Signed in Baton Rouge, Louisiana, on May 15, 2017.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[41] The Court notes that the Fifth Circuit did not direct this Court to recalculate the annual salary that Plaintiff would have earned had she been hired as the Baton Rouge police chief, which Magistrate Judge Riedlinger concluded would have been $102,276 (R. Doc. 74 at 31). Instead, the Fifth Circuit vacated this Court's prior award of damages and directed this Court to reconsider whether Plaintiff's decision to attend school full-time is consistent with her duty to mitigate damages under Title VII, which will determine the proper amount to award Plaintiff in back pay, and also directed this Court to "explain more fully its rationale" behind the calculation of Plaintiff's lost pension benefits. *Overman v. City of East Baton Rouge*, 656 F. App'x 664, 671-72 (5th Cir. 2016).
[42] R. Doc. 129.